File Date : July 14, 2026
26-MC-2907
Judge Orelia E. Merchant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ELIJAH D. STEWARD,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SER-VICES, LLC, and TRANSUNION, LLC,

Defendants.

Subpoena Compliance Court Case No.:

_____

District of Maine Case No.:
26-cv-00065-LEW

---

## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY BETTER MORTGAGE CORPORATION'S MOTION TO QUASH <u>PLAINTIFF ELIJAH D. STEWARD'S THIRD-PARTY SUBPOENA</u>

**LIPPES MATHIAS LLP**
Lippes Mathias, LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

Non-party Better Mortgage Corporation ("Better" or "Better") moves to quash a third-party subpoena seeking witness testimony (the "Deposition Subpoena") issued by Plaintiff Elijah D. Steward ("Steward") to Better. Steward issued the subpoena in a case pending in the United States District Court for the District of Maine, case no. 26-cv-00065-LEW (the "Maine Action"). The Maine Action involves Steward's claims under the Fair Credit Reporting Act against Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and TransUnion, LLC ("TransUnion" and together, "Defendants"). Better has attached the Deposition Subpoena that Steward issued to Better as Exhibit A to the declaration of Richard M. Scherer, Jr. ("Scherer Decl.").

## PRELIMINARY STATEMENT

This motion seeks to quash Steward's Deposition Subpoena, which requires testimony from a Better representative. The topics found in Deposition Subpoena track nearly verbatim the topics of Steward's separate Documents Subpoena it issued to Better. Better has attached the Documents Subpoena as Exhibit B to the Scherer Decl. Better has already produced its complete file concerning Steward, together with a declaration certifying the authenticity of the records in response to the Documents Subpoena. Better has attached its response to the Documents Subpoena as Exhibit C to the Scherer Decl. The documents produced by Better total just fifteen (15) pages. Requiring Better to designate and prepare a witness to provide unnecessary, cumulative, testimony concerning those same records and subjects would impose an undue burden on a non-party without providing meaningful additional evidence.

Better is not a party to the underlying Maine Action against Defendants. Indeed, the Maine Action Complaint mentions Better just once—alleging simply that Steward applied online for a mortgage loan from Better in September 2025 and was denied. As such, anything beyond the documents Better already provided poses an undue burden: in addition to being a complete set that

1

respond to the topics of both subpoenas, the records unambiguously lay out what happened to Steward's September 2025 mortgage application. Better denied Steward's application based on his credit score and the only credit report in its possession at that time, that being a credit report prepared by TransUnion. Better's notice to Steward that it was not extending him a mortgage expressly stated that its decision was based on information from that credit report.

Despite the complete set of records that Better provided, Steward has nevertheless insisted on a deposition. The deposition, however, is entirely unnecessary and should not proceed. Steward has all of Better's records related to Steward's application for a loan and confirmation that the loan was denied due to the credit score set forth on a TransUnion credit report. Whatever marginal value Steward might gain from a deposition of a Better representative is outweighed by the complete evidentiary record that Better has already provided. Such limited value does not justify requiring a non-party to identify, prepare, and produce a representative for deposition. The subpoena should be quashed.

## BACKGROUND

Steward commenced the Maine Action against Defendants on February 4, 2026, alleging violations of the Fair Credit Reporting Act. (Scherer Decl. Ex. B ("Maine Action Compl.") at 1 & ¶¶ 25, 77-108). Steward alleges that his former spouse opened multiple accounts in his name without his knowledge or consent, incurring substantial balances and debts. (*Id.* ¶¶ 4-6). Steward further alleges that his former spouse also took control of accounts that Steward had opened. (*Id.*).

Steward's complaint then asserts violations of the Fair Credit Reporting Act, alleging that the three consumer reporting agency Defendants:

- failed to remove or "block" information stemming from Steward's former spouse's theft of Steward's identity despite Steward reporting the same, in violation of 15 U.S.C. § 1681c-2 (*id.* ¶¶ 77-92);

2

- failed to perform reasonable reinvestigations after Steward disputed information in his credit files and/or reports, in violation of 15 U.S.C. § 1681i (*id.* ¶¶ 93-97);

- failed to follow reasonable procedures to ensure maximum possible accuracy of the information they reported about Steward, in violation of 15 U.S.C. § 1681e(b) (*id.* ¶¶ 98-103)

- violated Maine's companion statute, the Maine Fair Credit Reporting Act, 10 M.R.S. § 1310-H (*id.* ¶¶ 104-08).

Against this backdrop, Better's role in the Maine Action is peripheral at best. Better is mentioned in only one of the Maine Action Complaint's 118 numbered paragraphs. (*See* Maine Action Compl. (Scherer Decl. Ex. B) ¶ 71). That paragraph alleges only that Steward applied online for a mortgage loan from Better in September 2025,[1] and was denied based on information in his credit report, including a "serious delinquency," and a reported credit score of 577. (*Id.*). Indeed, the Maine Action Complaint elsewhere identifies the witnesses central to Steward's claims as the credit reporting agencies' own agents or representatives who handled Steward's credit disputes: "The only percipient witnesses to a CRA's credit-dispute investigations are the dispute agents who conducted those investigations." (*Id.* ¶ 13). Better's potentially relevant information is thus limited to Steward's September 2025 mortgage application and Better's decision on that application.

Separately, the procedural posture of the Maine Action remains in flux. On June 3, 2026, one of the Maine Action Defendants, Experian, moved to stay the Maine Action and to compel

---

[1] The Maine Action Complaint alleges only that Steward applied for a mortgage from Better in September 2025. (Maine Action Compl. ¶ 71). However, the documents that Better provided in its production to Steward clarify that he applied for a mortgage on September 21, 2025. (Scherer Decl. Ex. H (BMC_0001 & BMC_0004)).

arbitration. (Scherer Decl. Ex. C ("Maine Action Docket"), ECF No. 39; *see also* Scherer Decl. Ex. D). Steward's opposition was initially due on June 24, 2026. (*Id.*). On June 15, 2026, Steward moved to extend that deadline, referring the Court to the parties' joint status report filed the same day. (Maine Action Docket, ECF Nos. 48 & 50). The Court granted that request on June 16, 2026, extending Steward's opposition deadline to July 8, 2026. (*Id.*, ECF No. 51). Steward filed a second extension request on June 29, 2026, which the Court again granted, extending his opposition deadline to July 15, 2026. (*Id.*, ECF Nos. 55 & 56).

While Experian's motion remained pending—and while Steward sought extensions of his time to oppose it—Steward served Better with two non-party subpoenas under Fed. R. Civ. P. 45. The first of these two subpoenas required Better to search for and produce documents to Steward's counsel. (Scherer Decl. Ex. E (the "Documents Subpoena") at 6 & 12). The other subpoena—the Deposition Subpoena that is the subject of this motion to quash—demanded that Better prepare a witness and produce that witness for a deposition. (Deposition Subpoena (Scherer Decl. Ex. A) at 4 & 11[2]). Although both subpoenas were dated June 10, 2026, Steward served them on Better on June 12, 2026. (Testimony Subpoena at 1 & 4; Documents Subpoena at 1 & 6; *see also* Scherer Decl. ¶ 10).

Despite the time and effort Better would have to expend identifying and preparing a witness, Steward's Deposition Subpoena identifies no topic unavailable through the Documents Subpoena. The topics listed on page 11 of the Deposition Subpoena track the topics of the Documents Subpoena nearly verbatim. (*Compare* Testimony Subpoena at 11 *with* Documents Subpoena at

---

[2] Page number citations to the Documents Subpoena and Testimony Subpoena are to the page numbers of the exhibit PDF, not to page numbers Steward included.

12). The Deposition Subpoena therefore seeks testimony concerning substantially the same records and subject matter that Better has already addressed through its document production.

Better responded to the Documents Subpoena in full, serving written objections and producing its complete records concerning Steward. Better's written objections indicate that Better searched its records and identified documents bearing Bates numbers BMC_0001-15 as the entirety of the documents responsive to the Documents Subpoena. (Scherer Decl. ¶ 18 & Ex. G ¶ 5; Scherer Decl. Ex. H[3] (BMC_0001-15); *see also* Scherer Decl. Ex. I ("Himmelmann Decl.") ¶¶ 1-4). Amanda Himmelmann, Better's Senior Director of Compliance Management Systems, authenticated the production and declared that she was "not aware of any other documents that are responsive to the [Documents Subpoena] or otherwise pertain to" Steward and that the documents produced were "the complete set of documents." (Himmelmann Decl. ¶¶ 2-7). Better sent its written objections, the complete production bearing Bates numbers BMC_0001-15, and the Himmelmann Declaration to Steward's counsel on July 8, 2026. (Scherer Decl. ¶¶ 17, 20 & Ex. F at 1-2).

After completing its production, it was readily apparent that the documents Better had produced in response to the Documents Subpoena adequately addressed the topics of the Deposition and Documents Subpoenas. (*See id.* ¶ 21). Even so, Better attempted to resolve the dispute without motion practice. In its July 8, 2026, email, Better's counsel provided BMC_0001-15 along with the Himmelmann Declaration. (*Id.* ¶¶ 17 & 20). Better's counsel explained: "In light of the limited information Better Mortgage is in possession of and the certification of business records, I do not see the reason for a deposition." (Scherer Decl. ¶ 22 & Ex. F at 1-2). So, Better asked Steward to reconsider the need for a deposition after reviewing the production and, if Steward continued to insist on one, invited his counsel to meet and confer. (*Id.*).

---

[3] Steward's personal identifying information has been redacted within Exhibit H.

5

Despite having Better's complete production, Steward did not withdraw the Deposition Subpoena. Instead, on July 9, 2026, Steward's counsel stated that he would insist on a "short and targeted deposition." (Scherer Decl. ¶ 25 & Ex. F at 1). But even though the deposition would purportedly be "short and targeted," Steward's counsel went on to specify topics different from those noticed in the Deposition Subpoena. For example, Steward's counsel noted his desire to inquire about Better's having "no practical ability to independently verify the underlying credit data." (*Id.*). Even so, the parties conferred on July 10, 2026, in an effort to avoid motion practice. (Scherer Decl. ¶ 30 & Ex. J). Immediately afterward, Better confirmed in writing that it would move to quash and would not appear for the deposition scheduled for July 13, 2026. (*Id.*). Better provided this advance notice specifically so that Steward would not incur the unnecessary expense of arranging for a court reporter. (*Id.*).[4]

## LEGAL STANDARD

While motions to quash are "entrusted to the sound discretion of the district court," *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quotation omitted), Federal Rule of Civil Procedure 45(d)(3)(A)(iv) requires that the compliance court quash or modify a subpoena that subjects the recipient of the subpoena to undue burden. As the party moving to quash based on undue burden, Better has "[t]he burden of persuasion." *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) (quotation omitted).

But the ultimate burden on this motion does not relieve Steward of his threshold obligation to justify the discovery he seeks. After all, where a party seeks discovery from a non-party under Rule 45, that party "bears the initial burden of proving that the information and testimony sought

---

[4] While the deposition was noticed for July 10, 2026, counsel for Steward had agreed to postpone the deposition to a later date. (Scherer Decl. ¶ 16 & Ex. F at 2).

6

in the subpoena are relevant and proportional to the needs of the case[.]" *Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 1555685, at \*3 (S.D.N.Y. Apr. 10, 2024) (quotation omitted). Only upon that showing does the burden shift "to the party opposing discovery to show that the information sought is privileged or unduly burdensome." *Id.*

Undue burden—especially on a non-party—is not measured solely by the absolute expense or difficulty of compliance. Instead, "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005). Relevant considerations include "relevance, a party's need for the documents, whether the documents are available from other sources, the particularity with which the documents are described, and costs." *Sec. & Exch. Comm'n v. Archer*, 2018 WL 3424449, at \*1 (S.D.N.Y. July 2, 2018) (citation omitted).

And for non-parties like Better, "courts have held [ ] non-party status to be a significant factor in determining whether discovery is unduly burdensome." *Id.* at \*2 (quotation omitted); *see also Travelers*, 228 F.R.D. at 113 (noting that "courts [ ] give special weight to the burden on non-parties" when considering a motion to quash under Rule 45). So, although non-party status does not categorically limit discovery, it does weigh heavily when the same or comparable information is already available through the parties themselves, documents already produced, or other less burdensome sources. *See Gilead Sciences, Inc. v. Khaim*, 755 F. Supp. 3d 285, 299 (E.D.N.Y. 2024) (granting motion to quash in part because the party seeking discovery "has not shown that the information requested cannot be obtained by other means").

## ARGUMENT

Fed. R. Civ. P. 45 requires the Court to quash or modify a subpoena that subjects its recipient to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). As the moving party, Better bears "the burden of persuasion" on this motion to quash. *Sea Tow Int'l, Inc.*, 246 F.R.D. at 424 (citation omit-

7

ted). Better also has standing to challenge the Deposition Subpoena as its recipient. *See Gilead Sciences, Inc.*, 755 F. Supp. 3d at 293 ("In general, only the recipient of a subpoena may move to quash on the grounds of relevancy and undue burden." (citations omitted)). For the reasons discussed, the Court should quash Steward's Deposition Subpoena.

**I.      The subpoena poses an undue burden because Better has already produced and authenticated its complete and responsive file leaving little (if any) non-duplicative testimony.**

Courts treat discovery as an undue burden where a non-party deposition would produce duplicative testimony of limited marginal value. *See, e.g., In re Blackstone Partners, L.P.*, 2005 WL 1560505, at *3 (S.D.N.Y. July 1, 2005) (affirming the quashing of nonparty deposition subpoenas because the proposed testimony would be "duplicative and cumulative" and therefore "would subject [the nonparty] to undue burden"); *Vital Farms, Inc. v. Tanz*, 2023 WL 8782321, at *2-3 (S.D.N.Y. Dec. 19, 2023) (quashing nonparty deposition subpoena where the relevant information was already available through prior discovery, making further testimony duplicative and its limited value outweighed by the burden imposed); *Athalonz, LLC*, 2024 WL 1555685, at *3-4 (S.D.N.Y. Apr. 10, 2024) (quashing subpoena where any nonparty testimony or documents appeared duplicative of party discovery and the proponent had not shown that the nonparty possessed "unique, non-duplicative knowledge"). So too here.

Better has already produced and authenticated its complete, responsive, file concerning Steward. Those records include just one credit report prepared by TransUnion that Better obtained. They also contain Better's resulting mortgage decision and Better's communications with Steward concerning that decision. (*See generally* Scherer Decl. Ex. H).

The five deposition topics listed in the Deposition Subpoena do not identify a distinct body of information from what Better provided in its complete and authenticated production. As noted, the topics of the Deposition and Documents Subpoenas mirror each other closely. (*Compare* Dep-

8

osition Subpoena (Scherer Decl. Ex. A) at 11 *with* Documents Subpoena (Scherer Decl. Ex. E) at 12). Any deposition would therefore offer marginal evidentiary value. But requiring Better to identify, prepare, and produce a representative to provide cumulative testimony concerning the same records and subjects would impose an undue burden—not to mention one that is completely disproportionate. *See Travelers Indem. Co.*, 228 F.R.D. at 113 ("An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party.").

Here, Better's production of BMC_0001-15 and the Himmelmann Declaration adequately address each of Steward's topics noticed in the Deposition Subpoena, as set forth below.

- **Topic 1:** Better's "knowledge concerning all Documents" produced in response to the Documents Subpoena. (Deposition Subpoena (Scherer Decl. Ex. A) at 11). The Himmelmann Declaration authenticates and confirms the completeness of Better's production. (Himmelmann Decl. (Scherer Decl. Ex. I) ¶¶ 3-7). The Himmelmann Declaration thus eliminates the need for any testimony merely to identify or authenticate the records or establish the production's completeness.

- **Topic 2:** Better's "communications with [Steward]," all of which took place on September 21, 2025. (Deposition Subpoena at 11). Better produced records of all relevant communications, including on September 21, 2025, in connection with Steward's mortgage application. Those records included records of a telephone call, emails, the denial notice, a text message, and Better's communication history concerning Steward. (Scherer Decl. Ex. H (BMC_0003-11 & BMC_0014)). Because the Himmelmann Declaration confirms that the production is complete and that

Better is unaware of any other responsive documents, these records capture the communications encompassed by Topic 2. (Himmelmann Decl. ¶¶ 5-6.)

- **Topic 3:** "All Documents" that Better "received from any credit bureau" (Deposition Subpoena at 11). BMC_0001-02 comprise the TransUnion credit report obtained by Better concerning Steward—the only credit information in the complete production. (Scherer Decl. Ex. H (BMC_0001-02)); Himmelmann Decl. ¶¶ 5-6). The Himmelmann Declaration confirms that Better is unaware of any other credit reports or other responsive documents concerning Steward. (Himmelmann Decl. ¶¶ 5-6).

- **Topic 4:** "All logs, records, communications, credit scores, credit reports, or other documents that contributed to or were factors in mortgage loan application decision-making relating to [Steward] between January 1, 2025, and December 31, 2025." (Deposition Subpoena at 11). Again, Better produced all records it has concerning Steward, including the TransUnion credit report, the notification denying Steward's mortgage application, and all other communications concerning or with Steward. (Himmelmann Decl. ¶¶ 5-6; *see generally* Scherer Decl. Ex. H).

- **Topic 5:** "All Documents reflecting" Better's "determinations or decisions" concerning Steward's mortgage application, including "approvals, denials, terms offered," and the reasons for those decisions. (Deposition Subpoena at 11). BMC_0004-09 contain the notice by which Better denied Steward's mortgage application. (Scherer Decl. Ex. H (BMC_0004-09)). The notice states that Better could not approve Steward's request. (*Id.* (BMC_0004)). It further notes Steward's credit score of 577 and the requirement of a credit score of at least 580. (*Id.*

(BMC_0004-05)). Finally, the notice explains that Better relied in "whole or in part on information obtained in a report" from TransUnion. (*Id.* (BMC_0004)). BMC_0012 separately states that Better could not offer Steward a loan. (*Id.* (BMC_0012)). And BMC_0013 indicates his approval status as "AdverseDenied." (*Id.* (BMC_0013)).

Taken together, Better's complete and authenticated production addresses each topic noticed in the Deposition Subpoena and leaves no need for cumulative representative testimony concerning the same records and events. Indeed, it is unclear what additional relevant testimony a Better representative could provide. Under the applicable balancing test, the deposition's negligible value does not justify requiring Better to prepare and produce a corporate representative. *See Travelers Indem. Co.*, 228 F.R.D. at 113.

**II.    Steward's counsel's *post hoc* attempt to alter the Deposition Subpoena's topics is meritless.**

During Better's correspondence with Steward's counsel concerning the Deposition Subpoena, Steward's counsel attempted to characterize the proposed examination as a "short and targeted" one—notwithstanding the broad and duplicative topics in the Deposition Subpoena. (Scherer Decl. Ex. F at 1). As an initial matter, for purposes of determining Better's obligations, the topics of the Deposition Subpoena as written govern. *See, e.g., Althalonz, LLC*, 2024 WL 1555685, at *3 (S.D.N.Y. Apr. 10, 2024) (evaluating undue burden based on party's "requests as they stand now"); *N. Shore Window & Door, Inc. v Anderson Corp.*, 2022 WL 16788807, at *2 (E.D.N.Y. Sept. 14, 2022) (noting that "the overly broad and burdensome request in Topic No. 5 is inconsistent with Plaintiff's prior commitment to the court about the targeted nature of Rule 30(b)(6)"); *see also* Fed. R. Civ. P. 30(b)(6) (requiring that subpoenas issued to corporations like Better describe the "matters for examination").

11

Even accepting counsel's *post hoc* narrowing, the narrowed topics fare no better than those actually noticed in the Deposition Subpoena. On July 9, 2026, Steward's counsel stated by email that he intended to take what he dubbed a "short and targeted" deposition to establish that Better:

> (i) purchased the consumer report from Trans Union, (ii) expected Trans Union's report to be accurate, (iii) relied on Trans Union's report in making important business decisions, such as whether Plaintiff would qualify for a mortgage loan, and (iv) generally has no practical ability to independently verify the underlying credit data.

(Scherer Decl. Ex. F at 1). These alternative subjects do not justify a deposition.

*First*, there is no genuine dispute that Better purchased the TransUnion credit report and relied on it in denying Steward's mortgage application. The report identifies Better as the subscriber that obtained Steward's credit information and identifies TransUnion as the reporting agency. (Scherer Decl. Ex. H (BMC_0001-02)). Further, it is the only credit report in Better's complete records provided to Steward. (*See id.* (BMC_0001-15); *see also* Himmelmann Decl. (Scherer Decl. Ex. I) ¶¶ 5-6).

Beyond the credit report itself, Better's denial notice confirms that TransUnion supplied the information on which Better relied. The notice states that Better's credit decision was based "in whole or in part on information obtained in a report" from TransUnion. (Scherer Decl. Ex. H (BMC_0004)). It further states that Better obtained Steward's credit score from TransUnion and "used it in making [its] credit decision," noting that his score was 577. (*Id.* (BMC_0004-05)). Steward does not need organizational testimony to establish either that Better obtained the TransUnion report or that Better relied on it in evaluating Steward's application. Better's authenticated records explicitly say as much.

*Second*, whether Better expected the credit report it obtained to be accurate and whether Better has the "practical ability to verify the underlying credit data" are irrelevant, unduly burdensome, and were not among the topics noticed in the Deposition Subpoena. (Scherer Decl. Ex. F at

1). As discussed, Better relied on TransUnion's credit report in denying Steward's application—no other information is relevant to Steward's claims insofar as they involve Better. Next, all of Steward's topics listed in the Deposition Subpoena are expressly limited to documents, communications, credit information, and decision-making about Steward or his application. (Deposition Subpoena (Scherer Decl. Ex. A) at 11). Put simply, the Deposition Subpoena topics center on the documents that Better produced and on Steward. None of the noticed topics come anywhere close to asking about Better's expectations concerning credit reports or ability to verify data supplied by credit reporting agencies. (*See id.*). Those subjects only appeared later, in Steward's counsel's July 9 email describing the examination he wished to conduct—but not the one he noticed. (Scherer Decl. Ex. F at 1). Nor does the Maine Action Complaint assert a claim against Better or challenge Better's policies or procedures.

*Finally*, Steward's counsel identified a purported inconsistency between Better's denial notice and a text message stating that Better had "some good options" for Steward. (*Id.*). In his July 9 email, Steward's counsel asserted that the denial notice was sent at 10:51 a.m. on September 21, 2025, and the text followed at 10:54 a.m. on the same date. (*Id.*). Steward's counsel speculated that Better may have been reconsidering the three-point difference between Steward's score of 577 and the score of 580 identified in the notice. (*See id.*). Counsel surmised that Defendants *could* argue that Better had not "really" denied Steward's application. (*Id.*). At the outset, this speculation is irrelevant unless and until Defendants assert such a defense.

In any event, Steward is mistaken. The 10:51 a.m. email is not the denial notice; it was an automated email asking Steward to verify his email address. (Scherer Decl. Ex. H (BMC_0010)). Both the denial notice and the text message are time-stamped 10:54 a.m. (*Id.* (BMC_0004 & BMC_0011)). More importantly, the contemporaneous records consistently establish Better's de-

13

nial. The denial notice unequivocally stated that Better "cannot approve" Steward's loan request. (*Id.* (BMC_0004); *see also id.* (BMC_0012)). Steward likewise neglects the fact that Better's internal summary lists Steward's approval status as "AdverseDenied." (*Id.* (BMC_0013)). Better's complete and authenticated production therefore corrects Steward's mistaken factual assertion and supplies what Steward seeks. And so, a deposition concerning that same documentary evidence would be cumulative—not "targeted." Even as impermissibly reframed *post hoc*, Steward's deposition topics still do not warrant a deposition.

## CONCLUSION

For these reasons, the Court should quash Steward's Deposition Subpoena, along with such other and further relief as the Court may deem just and proper. Additionally, on this record, Steward has failed to withdraw the Deposition Subpoena despite it posing an undue burden and despite Better's request that Steward do so. Worse, Steward has not taken reasonable steps to avoid imposing this unreasonable burden, which may include pursuing alternative discovery before demanding that a Better representative sit for a deposition. As such, Better is entitled to its reasonable attorneys' fees pursuant to Fed. R. Civ. P. 45(d)(1). *See, e.g., Breaking Media v. Jowers*, 2021 WL 1299108, at *7-8 (S.D.N.Y. Apr. 7, 2021).

Respectfully submitted,

**LIPPES MATHIAS LLP**

Dated:    July 13, 2026
          Buffalo, NY

*s/Richard M. Scherer*
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
T: 716-853-5100
F: 716-853-5199
E: rscherer@lippes.com

*Attorneys for Non-Party*
*Better Mortgage Corporation*

14

## CERTIFICATE OF COMPLIANCE WITH LOC. R. CIV. P. 7.1(c)

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law contains 4,126 words, excluding the caption, any table(s) of contents or authorities, the signature block, and this certificate. I have calculated the number of words using the word-processing program used to prepare the document.

Dated:   July 13, 2026                                           _s/Richard M. Scherer_
                                                                 Richard M. Scherer, Jr.

15